UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IN RE SYNGENTA AG MIR 162 CORN )
LITIGATION, ) Master File No. 2:14-md-2591-JWL
) MDL 2591
THIS ORDER RELATES TO: )
  *Agribase International Inc. v.* )
  *Syngenta AG, et al.,* No. 15-9900-JWL )

# **ORDER**

In this negligence action involving the release of genetically modified corn into the U.S. corn supply, a dispute has arisen over whether plaintiff Agribase International, Inc., a corn exporter, has named the appropriate persons as document custodians whose records will be searched in response to discovery requests. Although Agribase has named two document custodians, defendants Syngenta AG, Syngenta Crop Protection AG, Syngenta Corporation, Syngenta Crop Protection, LLC, and Syngenta Seeds, LLC (collectively, "Syngenta") have filed a motion (ECF No. 40) for an order compelling Agribase to designate two additional custodians, namely, Zhenhua Qin, Agribase's former president and majority owner, and Richard Yang, Qin's former assistant. Because the court finds Qin and Yang are likely to have unique, discoverable information, and because Agribase has not demonstrated an undue burden in searching their records, the motion is granted.

## I.   Background

Agribase was a relatively small export company owned by Qin and Gene Liu.  It operated from 2010 to approximately 2015, buying corn and corn products in the U.S. and exporting them to China.  In November 2015, it filed this suit, alleging Syngenta's negligence in introducing corn containing the genetic trait MIR162 into the U.S. corn supply before MIR162 was approved by China caused a significant drop in corn prices.  Agribase asserts it "was injured by the collapse of the export market to China and suffered damages from reduced corn and corn by-product prices, from costs associated with lost contracts and rejected shipments of corn and corn by-products, and/or from the disruption and contraction in the export market for corn and corn by-products and the services associated with that market."[1]  More specifically, Agribase contends it lost four sales contracts due to Syngenta's "premature release of MIR162 in the United States."[2]

During the course of discovery, Syngenta served a request for production of documents on Agribase in May 2019.[3]  Agribase agreed to Syngenta's request that it run 46 search terms in electronically stored information ("ESI").  Agribase identified two custodians whose records it agreed to search: Liu, who was Agribase's co-owner, vice president, secretary, and treasurer, and whose responsibilities included "handling

---

[1] ECF No. 17 at 5.

[2] ECF No. 45 at 1-2.

[3] ECF No. 40-4.

2

financials, pricing, and sales contracts;"[4] and Terry English, who was Agribase's only employee and whose responsibilities included "trading and purchasing corn and corn by-products, logistics, and coordinating drayage and truckers."[5]

Syngenta then requested Agribase add Qin and Yang as two additional document custodians. As mentioned above, Qin is the only other owner of Agribase and served as the company's president. Yang served as Qin's assistant and translator. Although Yang was not an employee of Agribase, he used an Agribase e-mail address and "perform[ed] certain tasks on Agribase's behalf including assisting Mr. English with logistics."[6] Agribase refused Syngenta's request to search the electronic files of Qin and Yang. The instant motion followed.

## II. Legal Standards

Fed. R. Civ. P. 26(b)(1) entitles parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."[7] To determine whether discovery sought is proportional to the needs of the

---

[4] ECF No. 45 at 3.

[5] ECF No. 45 at 2.

[6] ECF No. 45 at 4.

[7] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). *See also Rowan v. Sunflower Elec. Power Corp.*, No. 15-9227-JWL-TJJ, 2016 WL 3745680, at *2 (D. Kan.

3

case, the court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[8] Fed. R. Civ. P. 34 permits a party to seek the discovery of documents, including ESI.

Generally, absent a different agreement between the parties, the party responding to a discovery request may select the custodians it deems most likely to have responsive documents.[9] When the opposing party moves to compel the designation of an additional ESI custodian, the movant bears the burden of demonstrating the proposed custodian's "ESI likely includes information relevant to the claims or defenses in the case."[10] Considering the proportionality requirement of Rule 26(b), the movant further must show the proposed custodian "is likely to have unique information and ESI, not available through other [designated] custodians."[11] In the lead case of this MDL involving a suit by corn

---

July 13, 2016) (quoting *Oppenheimer* and ruling the *Oppenheimer* standard still relevant after the 2015 Amendment to Rule 26(b)(1)).

[8] Fed. R. Civ. P. 26(b)(1).

[9] *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-md-2785-DDC-TJJ, 2018 WL 1440923, at *2 (D. Kan. Mar. 15, 2018).

[10] *Id.*

[11] *Id.* at *3; *see also Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 106-07 (S.D.N.Y. 2013) (holding that whether a person is an appropriate document custodian generally turns on whether "their inclusion in ESI searches is reasonably calculated to lead to relevant evidence that might not be captured if they were excluded").

4

producers against Syngenta, the undersigned U.S. Magistrate Judge found good cause for the appointment of 15 (rather than 5) proposed records custodians where the proposed custodians appeared to be "fairly high level managers with direct knowledge about important aspects of this case," where the discovery sought was "targeted, narrowly drawn, and proportionate," and where the responding party had not "made an adequate evidentiary showing that 15 custodians (as opposed to 5) would involve undue expense."[12]

### III. Analysis

Applying these legal standards, the court finds Syngenta has demonstrated Qin and Yang are likely to have unique, relevant ESI that has not been captured by Agribase's search of Liu and English's records. Syngenta has presented the deposition transcript of English, who testified as Agribase's Fed. R. Civ. P. 30(b)(6) representative. On Agribase's behalf, English represented that Qin was "in charge of" Agribase's sales in China and "communicated with the buyers in China."[13] When asked about Yang's role for Agribase, English testified that Yang conveyed purchase offers from China[14] and communicated with

---

[12] *In re Syngenta AG MIR 162 Corn Litig.*, No. 14-md-2591-JWL (D. Kan. June 23, 2015), ECF No. 861 (text entry).

[13] *See* ECF No. 44-1 at 14-15, Depo. Trans. of Terry English, given as Agribase's Fed. R. Civ. P. 30(b)(6) representative.

[14] *Id.* at 16.

5

English about "procuring product here in the US."[15] Yang further managed logistics for Agribase by obtaining bookings and coordinating drays and truckers.[16]

Qin and Yang (who were based in China) had the responsibility of communicating with Chinese purchasers of the corn and corn products, and this role was unique to them—it was not a role filled by Liu or English (who were based in the U.S.).[17] Their ESI is clearly relevant to the claims and defenses in this case. Such information could bear on Agribase's actual or potential contract terms with Chinese buyers, Agribase's purported lost profits, and Agribase's independent knowledge of MIR162's approval status by China and/or whether Agribase's shipments to China would be rejected. In addition, Yang's role managing logistics for the company may lead to documents in his control that are not duplicative of the logistics handled by English. Without ESI from Qin and Yang (who essentially represented the Chinese branch of the company), relevant, responsive information likely will not be captured in Agribase's document production.

Agribase's arguments against adding Qin and Yang as custodians are respectfully rejected. First, Agribase asserts their addition would "broaden discovery in a manner wildly disproportionate to the needs of the case."[18] But Agribase provides no specific

---

[15] *Id*. at 23. English was responsible for purchasing the grain in the U.S. for export. *Id.* at 7.

[16] *Id.* at 42.

[17] *See id.* at 7, 15, 20; ECF No. 45 at 2-3.

[18] ECF No. 45 at 2.

6

information about the time or expense it would incur in searching Qin and Yang's ESI. Without an affidavit or other evidence of the burden that Agribase would incur, the court is not left with information sufficient to make a proportionality determination.[19] Agribase does state it already has produced more than 118,000 documents from the ESI of Liu and English,[20] but this number is irrelevant if those documents miss a significant portion of the issues in the case.[21] Next, Agribase notes English and Liu were "both intimately involved in the details surrounding" the four sales contracts at issue in this case.[22] But again, accepting the truth of this statement does not diminish the fact that Qin and Yang were also involved in the four contracts and likely have relevant information that would not be captured by the ESI of English and Liu. Agribase seeks more than $3 million in damages, and ordering the collection of documents from the persons responsible for communicating

---

[19] *See Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.,* No. 12-2350-SAC, 2014 WL 806122, at *8 (D. Kan. Feb. 28, 2014) ("B & V fails to show the amount of data each custodian has maintained on their hard drive or how much time and resources would be necessary to gather such information. Beyond B & V's mere conclusory assertion, this Court is left with little to determine the burden or expense of producing information from these custodian hard drives.").

[20] ECF No. 45 at 3; *see also id.* at 5 ("Agribase has produced over 98% of all of Mr. English documents generated.").

[21] Moreover, Syngenta notes that this production included many non-responsive documents, such as "(a) at least 236 email advertisements from Cabela's; (b) at least 668 emails from Priceline; (c) another 335 emails from Travelocity; (d) multiple copies of Mr. English's personal telephone bills; and (e) emails pertaining to, among other things, high school reunions and nuns." ECF No. 50 at 5-6 (citations omitted).

[22] ECF No. 45 at 6.

with Chinese buyers, particularly when those persons are the company's president and his assistant, is not disproportional.

Second, Agribase asserts Qin did not use an "@agribaseinc.com" e-mail address, but instead conducted business on personal e-mail accounts. Perhaps if Qin had used an Agribase e-mail account, the ESI sought would be in the possession of Agribase and easier to access. But Rule 34 permits Syngenta to obtain documents within Agribase's "possession, custody, or control." Agribase has not suggested business-related e-mails in the personal e-mail accounts of its president and majority owner are not within its control. "[C]ontrol comprehends not only possession but also the right, authority, or ability to obtain the documents."[23] Thus, "it is not unusual for documents in the possession of a third party, closely connected to the litigation, to be subject to a Rule 34 request."[24] Agribase makes the conclusory statements that searching the accounts would be "extremely

---

[23] *Ice Corp. v. Hamilton Sundstrand Corp.*, 245 F.R.D. 513, 516 (D. Kan. 2007) (internal quotations and citation omitted).

[24]*Id*. at 517 (internal quotations and citation omitted); *see also CA, Inc. v. AppDynamics, Inc*., No. CV 13-2111(WFK)(SIL), 2014 WL 12860591, at *4 (E.D.N.Y. Sept. 8, 2014) ("It is worth recognizing that a contrary conclusion would not make sense. If responsive emails kept on the officers' and founders' personal email accounts are not subject to a Rule 34 notice to produce, it would be tantamount to an invitation for executives to keep an email equivalent of two sets of correspondence, one discoverable and the other not—a recipe for deceit.").

intrusive" and "wildly burdensome,"[25] but, again, without evidence or specific explanation to support these claims, they cannot be a basis for the court's decision.

Third, Agribase suggests Qin does not communicate in English and did not communicate in writing regarding Agribase business.[26] Agribase does not explain the relevance of these facts or why they should preclude a search of his electronic records for responsive discovery. Syngenta has requested the production of Qin's relevant Chinese-language communications. The court is not persuaded by this undeveloped argument.

Finding Qin and Yang's records are likely to contain relevant information not available in the records of Liu and English, and further finding no indication that Qin and Yang's records are inaccessible or burdensome to access, the court concludes Qin and Yang should be added to Agribase's list of document custodians.

IT IS THEREFORE ORDERED that Syngenta's motion to compel the production of documents from Qin and Yang (ECF No. 40) is granted. In light of the impending December 6, 2019 discovery deadline, Agribase is ordered to collect and produce responsive documents from Qin and Yang's records by **November 14, 2019**.[27]

Dated October 31, 2019, at Kansas City, Kansas.

---

[25] ECF No. 45 at 6.

[26] *Id.* at 4. Agribase's suggestion that Qin did not communicate in writing appears to directly counter Agribase's argument that searching Qin's personal e-mail accounts for case-related terms would be "wildly burdensome."

[27] Syngenta requested a two-week production period, ECF No. 44 at 2, to which Agribase did not respond.

s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge